IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RAYNETTE AH CHONG, | ) | CIVIL NO. 13-00663 LEK-KSC |
| Plaintiff, | ) | |
| vs. | ) | |
| PATRICIA MCMANAMAN, in her official capacity as the Director of the Hawai`i Department of Human Services, | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S
<u>CROSS-MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT</u>**

On February 24, 2014, Defendant Patricia McManaman, in her official capacity as the Director of the Hawai`i Department of Human Services ("DHS" and "Defendant"), filed her Motion to Dismiss. [Dkt. no. 23.] On March 10, 2014, Plaintiff Raynette Ah Chong, individually and on behalf of the class of licensed foster care providers residing in the State of Hawai`i ("Plaintiff"),[1] filed her memorandum in opposition to the Motion to Dismiss ("Memorandum in Opposition") and her Cross-Motion for Leave to File First Amended Complaint ("Motion to Amend"). [Dkt. nos. 34, 35.] On March 17, 2014, Defendant filed a document that was both her reply in support of the Motion to Dismiss and her

---

[1] This Court notes that, although Plaintiff filed this case as a class action, she has not yet filed a motion for class certification.

memorandum in opposition to the Motion to Amend ("Joint Reply").
[Dkt. no. 38.]  On March 24, 2014, Plaintiff filed a reply in
support of the Motion to Amend ("Plaintiffs' Reply").  [Dkt. no.
39.]  These matters came on for hearing on March 31, 2014.  After
careful consideration of the motions, supporting and opposing
memoranda, and the arguments of counsel, Defendant's Motion to
Dismiss is HEREBY GRANTED IN PART AND DENIED IN PART, and
Plaintiff's Motion to Amend is HEREBY DENIED, for the reasons set
forth below.

**BACKGROUND**

Plaintiff filed the Complaint for Declaratory Judgment
and Permanent Injunctive Relief ("Complaint") on December 3,
2013.  The crux of this action is set forth in the Introduction
to the Complaint:

> 1.  This is a class action for declaratory
> and injunctive relief brought on behalf of
> licensed foster parents residing in Hawai`i who
> care for abused and neglected children who have
> been removed from the custody of their parents by
> operation of state law.
>
> 2.  Plaintiff RAYNETTE NALANI AH CHONG has
> provided foster care services for over 100
> children since the mid-1990s.  She has not
> received payments adequate to cover the costs of
> providing care to those foster children.  She has
> been asked to, and desires to, continue providing
> care and comfort for foster children, but she
> wants to be compensated properly for the cost of
> providing their basic needs, as required by
> federal law.
>
> 3.  Ms. Ah Chong seeks an injunction
> prohibiting Defendant from continuing to violate

>           the rights of foster parents under The Child
>           Welfare Act, Title IV-E of the Social Security
>           Act, 42 U.S.C. §§ 670-679(b) (the "Child Welfare
>           Act") by failing to make foster care maintenance
>           payments adequate to cover the costs of foster
>           care.

[Id. at ¶¶ 1-3.]  Plaintiff alleges that, although the State of Hawai`i ("the State") accepts federal funding under the Child Welfare Act, the State has not increased its monthly maintenance payments to foster parents since 1990, and the payment is insufficient to compensate foster parents for the costs they incur to care for a foster child.  [Id. at ¶ 5.]  Plaintiff seeks an injunction requiring the State to comply with the Child Welfare Act's requirement to provide adequate maintenance payments to foster parents.[2]  Plaintiff argues that, without such relief "foster children will be deprived of adequate support and foster parents will be forced to choose between providing inadequate care or closing their doors to foster children, to the great detriment of the affected children."  [Id. at ¶ 6.]  The Complaint alleges that "[t]here is currently an actual controversy between Plaintiff and Defendant that is ripe for adjudication as to whether the basic foster parent maintenance payment rates fail to comply with federal law in setting rates for foster care maintenance payments."  [Id. at ¶ 19.]

---

[2] The Complaint alleges that Defendant "is responsible for assuring that [DHS] calculates and distributes foster care payments in conformity with federal law."  [Complaint at ¶ 8.]

Plaintiff states that the Child Welfare Act requires participating states to provide "foster care maintenance payments" to licensed foster parents. [Id. at ¶ 26 (citing 42 U.S.C. §§ 671(a)(2), 672(b)(1), 675(4);[3] 45 C.F.R. § 1356.21(a)).]

According to the Complaint, DHS's monthly foster care maintenance payment is $529.00, regardless of the age of the foster child. [Id. at ¶ 28.] The Complaint alleges that DHS's monthly foster care maintenance payment is grossly inadequate and does not cover the basic costs of board for a foster child in Hawai`i. [Id. at ¶¶ 30-33.] According to Plaintiff, this disparity "has contributed to a steep decline in the number of foster families in Hawai`i." [Id. at ¶ 34 (citation omitted).]

Plaintiff asserts that, to keep up with inflation, DHS's monthly foster care maintenance payment should be more than $950.00. According to the Complaint, DHS has shown little interest in increasing the payments, and three bills to increase

---

[3] The Child Welfare Act states:

> The term "foster care maintenance payments" means payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement.

42 U.S.C. § 675(4)(A).

the monthly amount have failed in prior sessions of the Hawai`i Legislature. According to Plaintiff, DHS opposed the increase until the 2013 legislative session, when DHS argued that the legislature should defer any increase to allow DHS time to determine if an increase was feasible. [Id. at ¶¶ 35-36.]

The Complaint alleges a single claim - a 42 U.S.C. § 1983 claim based upon the violation of the Child Welfare Act. The Complaint prays for: declaratory relief; temporary and permanent injunctive relief; attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and any other appropriate relief.

Defendant filed her Answer to the Complaint on December 23, 2013, [dkt. no. 16,] and brings the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) to challenge Plaintiff's standing. Plaintiff's Motion to Amend seeks leave to file the proposed First Amended Complaint, which would add Patricia Sheehey and Patrick Sheehey ("the Sheeheys") as plaintiffs.

**STANDARD**

Fed. R. Civ. P. 12(b)(1) authorizes a district court to dismiss an action for "lack of subject matter jurisdiction[.]" "[T]he party asserting subject matter jurisdiction has the burden of proving its existence." Robinson v. United States, 586 F.3d 683, 685 (9th Cir. 2009). This district court has stated that a Rule 12(b)(1) motion "may (1) attack the allegations of a

pleading as insufficient to confer subject matter jurisdiction on the court ('facial attack') or (2) 'attack the existence of subject matter jurisdiction in fact' ('factual attack')." Krakauer v. Indymac Mortg. Servs., Civ. No. 09-00518 ACK-BMK, 2013 WL 704861, at *2 (D. Hawai`i Feb. 26, 2013) (some citations omitted) (quoting Malama Makua v. Rumsfeld, 136 F. Supp. 2d 1155, 1159 (D. Hawai`i 2001)).

When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (citation and quotation marks omitted). "But courts have discretion to deny leave to amend a complaint for futility."

Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th Cir. 1987) (citation and quotation marks omitted).

**DISCUSSION**

I. **Standing**

Defendant urges this Court to dismiss the Complaint for lack of standing because, at the time Plaintiff filed the Complaint, she did not have a foster child in her home and therefore was not receiving foster care maintenance payments from DHS. Defendant also urges this Court to dismiss Plaintiff's Complaint with prejudice because Plaintiff still does not have a foster child in her home at the present time, and cannot cure the lack of standing.

The Ninth Circuit has stated that:

> The requirements for Article III standing are familiar. First, the petitioner must show that it has suffered "an injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quotation marks and citations omitted). Second, it must show that the injury is "fairly traceable to the challenged action of the defendant," and is not "the result of the independent action of some third party not before the court." Id. (quotation marks and alternations omitted). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561, 112 S. Ct. 2130 (quotation marks omitted). . . .

Ass'n of Pub. Agency Customers v. Bonneville Power Admin., 733 F.3d 939, 950 (9th Cir. 2013). "When evaluating whether these

three elements are present, [a court] must look to the facts 'as they exist[ed] at the time the complaint was filed.'" ACLU of Nev. v. Lomax, 471 F.3d 1010, 1015 (9th Cir. 2006) (quoting Lujan, 504 U.S. at 569 n.4, 112 S. Ct. 2130).

Although Plaintiff is not currently receiving foster care maintenance payments, she argues that she is currently suffering an injury in fact as a result of Defendant's actions. Plaintiff presented evidence that she has two children who she adopted and two other children who are under her permanent custody. Each of the four children is a former foster child. Plaintiff receives a monthly payment of $529.00 for each child from DHS. [Mem. in Opp., Decl. of Raynette Nalani Ah Chong ("Pltf. Decl.") at ¶¶ 4-5.] Plaintiff argues that the adoption assistance payments and guardian assistance payments that she currently receives are limited by the amount of the foster care maintenance payment. [Mem. in Opp. at 7-8 (citing 42 U.S.C. § 673(a)(3), (d)(2); Haw. Admin. R. § 17-1621-10(b)).] Thus, Plaintiff argues that she has standing to bring this suit to address Defendant's violation of the Child Welfare Act because DHS's grossly inadequate foster care maintenance payments also limit her adoption assistance payments and her guardian assistance payments to inadequate amounts. This Court rejects this argument because, as Plaintiff's counsel conceded at the hearing, the Complaint does not contain any allegations regarding

the adoption assistance payments and the guardian assistance payments. This Court therefore finds that Plaintiff is not currently suffering the alleged injury described in the Complaint.

Plaintiff next argues that she has standing because she has suffered the alleged injury in the past and it is likely that she will suffer similar injury in the future. Plaintiff has presented evidence that she has a current license to be a foster care provider for up to two children through September 13, 2015. [Pltf. Decl. at ¶ 5; id., Exh. B.] She also states:

> 6. Although I have not taken a foster child into my home for some time, [DHS] has continued to ask me to care for foster children. Their last request made [sic] around the end of November 2013.
>
> 7. I turned down that request because I did not think the child would be a good fit with my current household composition. When a suitable opportunity arises (with an age- and sex-appropriate child), I will take a foster child under my care again.

[Pltf. Decl. at ¶¶ 6-7.] Thus, Plaintiff argues that the following factors are sufficient to establish standing based on a likelihood of future injury: her current license as a foster care provider; the fact that she has cared for an average of five foster children per year since the 1990's; and her testimony that she will take a foster care placement as soon as DHS offers her a child of suitable age and gender.

In the related context of the Article III case or controversy requirement, the Ninth Circuit has stated:

> A person's past exposure to alleged unlawful conduct is insufficient to establish a present case or controversy entitling him to injunctive relief. O'Shea v. Littleton, 414 U.S. 488, 495, 94 S. Ct. 669, 676, 38 L. Ed. 2d 674 (1974). Rather, to establish a present case or controversy, plaintiff must demonstrate "the likelihood of similar injury in the future." LaDuke v. Nelson, 762 F.2d 1318, 1324 (9th Cir. 1985) (discussing City of Los Angeles v. Lyons, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)), *modified*, 796 F.2d 309 (9th Cir. 1986). Plaintiff must show that there is a "credible threat" that she will again be subject to the particular injury against which injunctive relief is sought. Kolender v. Lawson, 461 U.S. 352, 355 n.3, 103 S. Ct. 1855, 1857 n.3, 75 L. Ed. 2d 903 (1983). A "mere physical or theoretical possibility" that the challenged conduct will again injure the plaintiff is insufficient to establish a present case or controversy. Murphy v. Hunt, 455 U.S. 478, 482, 102 S. Ct. 1181, 1183, 71 L. Ed. 2d 353 (1982).
>
> Moreover, plaintiff's showing must be objective in character; plaintiff's mere attestation that she fears a repetition of the challenged conduct is insufficient to show a likelihood of recurrence. Sample [v. Johnson], 771 F.2d [1335,] 1343 [(9th Cir. 1985)] (citing Preiser v. Newkirk, 422 U.S. 395, 402–03, 95 S. Ct. 2330, 2334–35, 45 L. Ed. 2d 272 (1975)). . . .

Coverdell v. Wash. Dep't of Soc. & Health Servs., 834 F.2d 758, 766 (9th Cir. 1987).

Plaintiff contends that the evidence that she has presented is sufficient to meet this standard, and she argues that, pursuant to Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 212 (1995), the statistical evidence that she has cared for

10

an average of five foster children per year is sufficient to establish a likelihood of future injury. This Court disagrees.

Adarand Constructors, Inc. ("Adarand") submitted the low bid for a guardrail subcontract that was part of a federal highway project, but the contractor awarded the subcontract to another bidder that was a certified "small businesses controlled by 'socially and economically disadvantaged individuals,'" because the prime contract provided that the contractor would receive additional compensation if it hired such certified business. Id. at 205. Adarand brought suit alleging that the Small Business Act presumption, which allowed for such additional compensation, constituted race discrimination in violation of the Fifth Amendment. Id. at 205-06. In holding that Adarand had standing to bring the action, the United States Supreme Court stated:

> Adarand's general manager said in a deposition that his company bids on every guardrail project in Colorado. . . . Thus, statistics from the years 1983 through 1990 indicate that the [Central Federal Lands Highways Division ("CFLHD")] lets on average 1 ½ contracts per year that could injure Adarand in the manner it alleges here. Nothing in the record suggests that the CFLHD has altered the frequency with which it lets contracts that include guardrail work. And the record indicates that Adarand often must compete for contracts against companies certified as small disadvantaged businesses. Because the evidence in this case indicates that the CFLHD is likely to let contracts involving guardrail work that contain a subcontractor compensation clause at least once per year in Colorado, that Adarand is very likely to bid on each such contract, and that Adarand

11

> often must compete for such contracts against
> small disadvantaged businesses, we are satisfied
> that Adarand has standing to bring this lawsuit.

Id. at 212 (citations omitted).

Adarand does not support Plaintiff's argument that the fact that she has cared for an average of five foster children per year establishes an objective, credible threat of future injury. The Supreme Court specifically noted that Adarand bid on every available guardrail project, and there were an "average 1 ½ contracts per year **that could injure Adarand** in the manner it alleges here." Id. (emphasis added). In contrast, Plaintiff has not presented any evidence of the number of potential foster placements that could injure her in the manner described in the Complaint. Although Plaintiff is currently eligible to care for foster children, she is not obligated to accept, nor does she accept, every placement DHS offers her. Plaintiff states that she is ready and willing to accept a foster child of appropriate age and gender, but Plaintiff has not presented any evidence of what she considers appropriate age and gender.

Further, Plaintiff would also have to state plausible factual allegations regarding the likelihood that DHS will offer her a placement that she considers appropriate. There is no objective evidence in the current record that it is likely that DHS will offer Plaintiff an appropriate placement. See Coverdell, 834 F.2d at 766 (stating that the plaintiff's showing

of the likelihood of similar injury in the future must be objective). Plaintiff has four children, and she will only accept a new placement that is "a good fit with [her] current household composition." [Pltf. Decl. at ¶ 7.] Plaintiff herself states that it has been "some time" since she has accepted a foster placement. [Id. at ¶ 6.] This Court therefore concludes that, based on the current record, Plaintiff has not pled that it is objectively likely that she will suffer future injury of the type alleged in the Complaint. Thus, Plaintiff does not have standing to bring the claim alleged in the Complaint.

Defendant argues that this Court should dismiss Plaintiff's Complaint with prejudice because amendment of Plaintiff's claim would be futile. See Johnson, 834 F.2d at 724. Defendant contends that Plaintiff cannot plead allegations that would cure her lack of standing. This Court disagrees. First, Plaintiff's amended complaint will include the Sheeheys as plaintiffs, and Defendant acknowledges that the Sheeheys are current foster parents who have standing to contest the amount of the foster care maintenance payments. Second, Plaintiff can add allegations about the adoption assistance payments and guardian assistance payments, which she currently receives and which she has argued are legally capped by the amount of DHS's foster care maintenance payments. Third, Plaintiff can add allegations that, if proven, would establish an objective likelihood of a future

13

foster placement in her home. This Court therefore finds that it is possible for Plaintiff to cure the defects in the Complaint by amendment. See Harris, 573 F.3d at 728.

Defendant's Motion is GRANTED to the extent that this Court DISMISSES Plaintiff's Complaint WITHOUT PREJUDICE.

**II. Motion to Amend**

Plaintiff apparently filed the Motion to Amend in the hope that this Court would allow her to file the proposed First Amended Complaint, which she argues cures the lack of standing, without ruling on Defendant's Motion to Dismiss. This Court acknowledges that pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave when justice so requires." In spite of this general rule, insofar as this Court has concluded that Plaintiff lacked standing to file the Complaint in the first instance, this Court cannot consider her Motion to Amend. This Court also notes that Plaintiff will not suffer prejudice from the denial of her Motion to Amend because this Court has dismissed the Complaint without prejudice. This Court therefore DENIES Plaintiff's Motion to Amend.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss, filed February 24, 2014, is HEREBY GRANTED IN PART AND DENIED IN PART. Defendant's Motion to Dismiss is GRANTED IN PART, insofar as Plaintiff's Complaint for Declaratory Judgment

and Permanent Injunctive Relief, filed December 3, 2013, is HEREBY DISMISSED, and Defendant's Motion to Dismiss is DENIED IN PART, insofar as the dismissal of Plaintiff's Complaint is WITHOUT PREJUDICE.  Plaintiff shall file her amended complaint by no later than **April 30, 2014**.  In light of this Court's ruling on Defendant's Motion to Dismiss, Plaintiff's Cross-Motion for Leave to File First Amended Complaint, filed March 10, 2014, is HEREBY DENIED.

      IT IS SO ORDERED.

      DATED AT HONOLULU, HAWAII, April 4, 2014.



      /s/ Leslie E. Kobayashi
      Leslie E. Kobayashi
      United States District Judge

**RAYNETTE AH CHONG VS. PATRICIA MCMANAMAN, ETC.; CIVIL 13-00663 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S CROSS-MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**